**CL**

<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAVID LAMBERT, : | |
| : | |
| Plaintiff, : | |
| : | Civ. A. No. 05-1476 (SRC) |
| v. : | |
| : | **OPINION** |
| ALFARO ORTIZ, et al., : | |
| : | |
| Defendants. : | |

<u>**Chesler, U.S.D.J.**</u>

This matter comes before the Court on the motion for summary judgment filed by Defendants, Alfaro Ortz, Sgt. C. House, Lt. R. Mikulak, and Lt. R. La Pinta. (Docket item 33). Plaintiff, David Lambert, has not opposed the motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, and the motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion for summary judgment is **granted** and Plaintiff's Complaint is **dismissed**.

**I. Background**

Plaintiff David Lambert, a former inmate of the New Jersey Department of Corrections ("DOC"), filed a Complaint pursuant to 42 U.S.C. § § 1983 and 1985 against Defendants Alfaro

Ortz, Sgt. C. House, Lt. R. Mikulak, and Lt. R. La Pinta (collectively, "Defendants"), alleging that they violated his constitutional and statutory rights when they conspired to charge him with false disciplinary infractions. (Complaint at ¶¶ 1, 6, 36-45). As this is a motion for summary judgment, the facts are presented in a light most favorable to Plaintiff, the non-moving party, and are as follows.

Plaintiff's Complaint arises out of two disciplinary charges issued against him on January 4, 2005. (Scott Dec., Ex. A at 15:21-21:25). Plaintiff alleges that Defendants conspired to charge him with false disciplinary infractions in retaliation for certain actions Plaintiff took serving in his capacity of the representative of "5-Down," the wing in which he resided at East Jersey State Prison ("EJSP"). (*Id*. at 15:21-21:25, 40:25-47:16). Plaintiff further asserts that Defendants' actions violated Plaintiff's rights to due process, equal protection, and were in violation of the New Jersey Administrative Code. (Complaint at ¶¶ 36-39, 44-45; Scott Dec., Ex. A at 22:1-40:24). Plaintiff also alleges that Defendants improperly transferred him to South Woods State Prison ("SWSP") on January 13, 2005, in violation of his First and Fourteenth Amendment rights. (Complaint at ¶¶ 42-43; Scott Dec., Ex. A at 47:17-51:12).

According to Plaintiff, while incarcerated at EJSP, he served as wing representative for the 5-Down housing unit. (Complaint at ¶ 11). In that role, Plaintiff acted as the liaison between the inmates in his wing and the prison administration. (Complaint at ¶ 11). Sometime in or around December 2004, Plaintiff addressed a letter to Defendant Ortiz, former administrator of EJSP expressing the inmates' concerns regarding notice that they would not be permitted to receive visitors on Saturday, December 25, 2004, or Saturday, January 1, 2005. (Complaint at ¶¶ 12-13). Defendant Ortiz did not respond to the letter. (*Id*.)

Plaintiff further contends that, around that same time, he also presented the issue to Defendant Ortiz at an in-person "wing representative meeting." (*Id*. at ¶ 14, 18). Plaintiff asserts that Defendant Ortiz "opposed the discussion" and advised Plaintiff that he "'was lucky that [Ortiz] liked [Plaintiff]." (*Id*.)

According to Plaintiff, after notifying the inmates in 5-Down of the meeting, he advised the inmates to have their family members appeal the decision to the Commissioner of the DOC. (*Id.* at ¶ 15). Plaintiff alleges that at least one inmate wrote to his family advising them that there would be no visitation on Christmas or New Year's Day, and enclosed memos and other materials from the wing bulletin board, which were marked "5-Down." (*Id*. at 16). Plaintiff contends the memos were issued by a previous administrator and advised that when a visiting day falls on a holiday, an alternative visiting day would be scheduled. (*Id*.) According to Plaintiff, William Plantier of the DOC responded to one inmate's family, advising them that there would be no visits on Christmas day or New Year's day, and sent courtesy copies of those letters to Defendant Ortiz. (*Id*. at ¶ 17).

On January 4, 2005, Defendant Mikulak received a request from Defendant Ortiz to investigate three letters that were sent to former DOC Commissioner Brown regarding the Christmas visitation schedule. (Johnson Dec., Ex. D at DOC76, DOC95, DOC98-99, DOC102). Defendant Mikulak concluded that all three letters were authored by one individual of the 5-Down housing unit and distributed as a form letter. (*Id*. at ODC76). Senior Corrections Officer ("SCO") Aronow searched the area around Plaintiff's bed and found, among Plaintiff's legal papers, a folder containing multiple copies of the letter identified as a form letter by Defendant Mikulak. (*Id.* at DOC76-77). Defendant LaPinta searched Plaintiff's work area in the prison

chapel and found twenty-five copies of another form letter and fifteen copies of a third form letter. (*Id*. at DOC76, DOC78, DOC88, DOC91-94).

The EJSP Inmate Handbook contains various sections prohibiting inmates from seeking grievances on behalf of other inmates or from seeking remedies on behalf of the entire inmate population. (*Id*. at DOC66). The EJSP handbook states that such grievances are to be addressed with the prison administration at the wing representative meetings, which are held on a regular basis. (*Id*.) According to Defendants, Plaintiff violated these rules when he provided form letters to other inmates seeking grievances on behalf of those inmates and on behalf of the entire inmate population, and therefore he was charged with disciplinary infraction .709 – failure to comply with a written rule or regulation of the correctional facility. (*Id*.) Additionally, because Plaintiff was in possession of multiple copies of form letters, three copies of which were received at DOC Central Office purportedly from relatives of other EJSP inmates, he was also charged with disciplinary infraction .351 – counterfeiting, forging or unauthorized reproduction or use of any document not enumerated in *.352. (*Id*. at DOC71). It was also found that Plaintiff improperly used his position as Chapel Clerk to make copies of the form letters for distribution to the inmate population. (*Id*.)

According to Plaintiff, at some point on January 4, 2005, he was escorted from the prison chapel, where he worked, and placed in "temporary close custody" status. (Complaint at ¶ 20). Plaintiff further explains that temporary close custody is a form of administrative segregation in which a prisoner is separated from the general population prior to being charged with an institutional infraction. According to Plaintiff, he remained in temporary close custody until 6:30 a.m. on January 13, 2005, when he was transferred to SWSP. (Complaint at ¶ 26).

Defendant House was assigned to investigate the disciplinary charges issued against Plaintiff on January 4, 2005.  (*Id.* at DOC67, DOC72).  On January 5, 2007, at 6:35 a.m. Defendant House served the charges on Plaintiff and read Plaintiff his "use immunity" rights.  (*Id.* at DOC66, DOC71).  During Defendant House's investigation, Plaintiff declined to make a statement and did not name any witnesses.  (*Id.* at DOC67, DOC72).  Defendant House indicated that the notes and evidence obtained during the searches supported the charges, and therefore Defendant House referred the charges to a hearing officer for adjudication.  (*Id.*)  Defendant House also noted that Plaintiff requested substitution of counsel.  (*Id.*)  Defendant House signed and dated his investigation reports and all of the materials were turned over to the Special Investigations Division for further investigation.  (*Id.* at DOC76).

On January 6, 2005, Senior Investigator Anthony Aversano interviewed Plaintiff regarding the form letters found during the searches.  (Johnson Dec., Ex. E at DOC124-25).  Plaintiff admitted to Investigator Aversano that he prepared the form letters for other inmates.  (*Id.* at DOC 124).  Plaintiff further reported that he had done this in the past and had also prepared letters for individual inmates.  (*Id.* at DOC 125).  When asked if his intention was to incite a group demonstration by inmates, Plaintiff responded it was not.  (*Id.*)  Investigator Aversano concluded that it did not appear that Plaintiff was threatening or trying to incite other inmates to demonstrate against the prison administration.  (*Id.*)

On January 12, 2005, Hearing Officer Gary Shepperd conducted a hearing on the charges and found Plaintiff not guilty, stating there was no clear evidence that Plaintiff copied or distributed the letters.  (Johnson Dec., Ex. D at DOC70, 75).  On January 13, 2005, Plaintiff was transferred from EJSP to SWSP, pursuant to an administrative transfer "per Administrator

Ortiz." (Johnson Dec., Ex. F at DOC27-28).

EJSP and SWSP both have administrative grievance procedures, which are outlined in the EJSP and SWSP Inmate Handbooks. (Johnson Dec. at ¶ 3, Ex. A at 44-47; Villar Dec. at ¶ 4, Ex. A at 96-97). The SWSP Inmate Handbook indicates inmates may obtain the multi-part Request System and Remedy Forms from housing unit officers, social workers, or at the law libraries. (Villar Dec. at ¶ 5, Ex. A at 96-97). Once completed, Forms must be deposited in designated drop boxes located in each housing unit. (*Id.*) At EJSP, the administrative remedy forms may be obtained from an inmate's housing unit supply, the unit social worker, or the law library upon the inmate's request. (Johnson Dec. at ¶ 3, Ex. A at 47). When completed, the inmate must deposit the forms in the Administrative Box. (*Id*. at Ex. A at 46).

In both prisons, once a form is completed and submitted, it is forwarded to the appropriate department or supervisor for a response. (*Id*. at ¶¶ 5-6, Ex. A at 48; Villar Dec. at ¶¶ 5-6, Ex. A at 96). Once a response to a form has been prepared, either the Administrator, Associate Administrator, or Assistant Superintendent signs the bottom of the form indicating that the inmate has received a response to his grievance and that the form may be returned to the inmate. (Johnson Dec. at ¶ 7; Villar Dec. at ¶ 6).

The SWSP Inmate Handbook indicates the "Final Step" of the inmate grievance process is an "Administrative Remedy Form – Appeal." (Johnson Dec., Ex. Villar Dec., Ex. A). The forms completed by Plaintiff after October 15, 2004, at both EJSP and SWSP all include sections identified as Part IV, where the inmate can submit an appeal of the decision, and Part V, for disposition of the appeal. (Johnson Dec., Ex. B; Villar Dec. at Ex. B). Accordingly, it appears that exhaustion of the administrative remedies, at least at SWSP, required Plaintiff to use the

administrative appeal.[1]  (Johnson Dec. at ¶ 8; Villar Dec. at ¶ 7).

Plaintiff conceded in deposition that he did not seek an administrative remedy concerning the claims of equal protection and retaliation raised in his Complaint.  (Scott Dec., Ex. A at 39:11-40:24).   When asked at deposition whether he filed any administrative remedy forms regarding his allegations of false disciplinary charges, Plaintiff responded that he did not know, but "believe[d] that [he] did."  (*Id.* at 51:2-7).  Although Plaintiff has filed administrative remedy forms regarding other issues, there are only three forms referenced in the record that are related to the issues identified in the Complaint: one dated January 12, 2005, which relates to Plaintiff's detention; and two dated March 13, and March 24, 2005, which relate to Plaintiff's transfer from EJSP to SWSP.  (Johnson Dec. at ¶ 12, Ex. C; Villar Dec., Ex. C at 5-6; Scott Dec., Ex. A at 31:19-24).

On or about February 26, 2007, approximately two weeks after Plaintiff's deposition, he sent copy of an administrative remedy form, dated January 12, 2005, to the Office of the Attorney General.  (Johnson Dec. at ¶ 13).  In that form, Plaintiff complains that Defendant Ortiz failed to release him from detention on the day that he appeared before the disciplinary hearing officer and was found not guilty of all of the disciplinary charges filed against him.  (Johnson

---

[1]The Court notes that Steven Johnson, Executive Assistant at EJSP, and Carlos Villar, Executive Assistant at SWSP, both state in their declarations that the administrative remedies are exhausted once the grievance form has been addressed and returned to the prisoner.  (Johnson Dec. at ¶ 8; Villar Dec. at ¶ 7).  Although this may be an accurate representation of the administrative remedy process at EJSP, the SWSP Inmate Handbook indicates the "Final Step" of the inmate grievance process as an "Administrative Remedy Form – Appeal." (Johnson Dec., Ex. Villar Dec., Ex. A).  Moreover, the forms completed by Plaintiff after October 15, 2004, at both EJSP and SWSP, which are submitted in support of this motion, indicate that there is indeed an administrative appeal available.  (Johnson Dec., Ex. B; Villar Dec. at Ex. B).  Accordingly, it appears that exhaustion of the administrative remedies, at least at SWSP, required Plaintiff to use the administrative appeal.

Dec., Ex. C). Only the inmate complaint area is completed; there is no writing in the portions to be completed by the prison administrators. (*Id*.) Additionally, there is no record of a January 12, 2005 form in the SWSP Inmate Request System Data Report. (Villar Dec. at Ex. B). Steven Johnson, Executive Assistant at EJSP, reported that he reviewed the January 12, 2005 administrative remedy form and determined that it had never been submitted to the EJSP Office of the Executive Assistant in Charge of Remedy Forms, as required by the EJSP Inmate Handbook. (Johnson Dec. ¶ 13).

The form dated March 13, 2005, states that Plaintiff "does not know why" he was transferred from EJSP to SWSP and requested that SID conduct an investigation to determine and advise Plaintiff "how or why [he was] arbitrarily . . . transferred." (Villar Dec., Ex. C at 5). In deposition, Plaintiff testified that sought an administrative remedy related to his Fourteenth Amendment due process claim, and described this form.[2] (Scott Dec., Ex. A at 31:10-24; Villar Dec., Ex. B at 1, Ex. C at 5). In the staff response area on the form, Plaintiff was advised that he must seek that information from the Special Investigations Division ("SID"). (Villar Dec., Ex. C at 5). Plaintiff did appeal this response. (*Id.*)

On March 24, 2005, Plaintiff submitted a second administrative remedy form "requesting that SID advise [him] as to why [he] was transferred out of EJSP to SWSP[.]" (*Id*. at 6). The response indicates that "per Classification Dep[artment the inmate was] transferred administratively per admin[istration at] EJSP." (*Id.*). Plaintiff did not appeal this response. (*Id.*)

---

[2] The Court notes that Plaintiff indicated that he submitted this form on March 2, 2005. However, the substance of the form Plaintiff described in deposition matches the form dated March 15, 2005. Because the date is not relevant to the outcome of this motion, the Court will rely on the date printed on the form.

-8-

Plaintiff initiated this action on March 15, 2005. Defendants were served with the Summons and Complaint on May 12, 2005. On August 24, 2005, the Clerk of Court entered default against Defendants. However, Defendants moved to set aside default on September 7, 2005, and the Court granted Defendants' motion on May 22, 2006.

Defendants now move for summary judgment asserting that Plaintiff's Complaint is barred by his failure to exhaust his administrative remedies, the Eleventh Amendment provides Defendants immunity from Plaintiff's claims, Defendants are entitled to qualified immunity, and that Defendants are otherwise entitled to judgment as a matter of law because Plaintiff fails to establish a triable issue of fact on the grounds asserted.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Penn. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing that there is no triable issue of fact and demonstrated an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586; see also *Anderson*, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold").

### B. Exhaustion of Administrative Remedies

The Prisoners Litigation Reform Act ("PLRA") requires prisoners first exhaust any available administrative remedies before asserting a claim under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a); *Jones v. Bock*, 127 S. Ct. 918-19 (2007).  The exhaustion requirement extends to persons who were incarcerated at the time they filed their original complaint, even if they are no longer incarcerated.  *Ahmed v. Dragovich*, 297 F. 3d 201, 210 (3rd Cir. 2002).   The PLRA further requires prisoners "exhaust all 'available' remedies, not just those that meet federal standards."  *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006).  The administrative remedies "need not be formally adopted through regulations by an agency in order for it to be considered an 'administrative remedy' within the scope of § 1997e(a)'s exhaustion requirement."  *Concepcion v. Morton*, 306 F. 3d 1347, 1355 (3d Cir. 2002).  Therefore, Plaintiffs must first attempt to

address their grievances through the administrative remedies described in prison inmate handbooks before they will be allowed to pursue section 1983 claims. *See id.*

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford*, 126 S. Ct. at 2386. This includes pursuing a grievance through each level of appeal available within the prison system. *See Spruill v. Gillis*, 372 F. 3d 218, 227-28, 231 (3d Cir. 2004) (holding that inmates must follow the procedural requirements of the prison grievance systems). Furthermore, section 1997e(a) requires exhaustion of an administrative remedy even if that remedy cannot grant the type of relief sought by an inmate. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Because Plaintiff was incarcerated when he first filed the Complaint, he is subject to the exhaustion requirement set forth in the PLRA. *See Ahmed*, 297 F. 3d at 210. Accordingly, Plaintiff was obligated to properly exhaust all available administrative remedies as outlined in the EJSP and the SWSP Inmate Handbooks before filing his complaint. *See Concepcion*, 306 F. 3d at 1355. Both inmate handbooks require prisoners to complete and submit administrative remedy forms to the designated drop boxes located within each prison. (Villar Dec. at ¶ 5, Ex. A at 96-97; Johnson Dec. at ¶ 3, Ex. A at 46-47).

Here, Plaintiff has identified five separate counts in his complaint: (1) Defendants conspired to, and did deny Plaintiff his rights guaranteed by the Fourteenth Amendment when they arbitrarily and capriciously confined Plaintiff in disciplinary detention for nine days; (2) Defendants denied Plaintiff equal protection of the law in violation of the Fourteenth Amendment when they placed Plaintiff in disciplinary detention, thus depriving him of visiting privileges, telephone privileges, and access to religious services and recreation; (3) Defendants

intentionally and willfully conspired to, and did manufacture several disciplinary charges in retaliation to Plaintiff having filed complaints and grievances against certain EJSP officials, thereby denying Plaintiff his rights to file grievances and complaints against EJSP officials in violation of his rights as guaranteed by the First and Fourteenth Amendments; (4) Defendants "arbitrarily" transferred Plaintiff to SWSP in retaliation for Plaintiff's complaints about various EJSP officials, the transfer caused hardship to Plaintiff's family and violated Plaintiff's rights as guaranteed by the Fist and Fourteenth Amendments; and (5) Defendants knowingly and willfully neglected or refused to exercise reasonable diligence to prevent these acts and refused to provide Plaintiff with a fair and impartial hearing and investigations in accordance with Title 10A of the New Jersey Administrative Code.  Complaint at ¶¶ 36-45.

      Defendants argue that Plaintiff failed to pursue any administrative remedies for the counts set forth in his Complaint, and therefore Defendants seek dismissal of this action based on Plaintiff's failure to exhaust his administrative remedies.

      The record indicates that Plaintiff never submitted any administrative remedy form regarding his placement in temporary close custody.   The only form in the record that relates to Plaintiff's detention is the form dated January 12, 2005.  As noted above, there is no response on the form from the prison administration and there is no record of a January 12, 2005 form in the SWSP Inmate Request System Data Report.  (Villar Dec. at Ex. B, C).  Additionally, Steven Johnson, Executive Assistant at EJSP, reported that he reviewed the January 12, 2005 administrative remedy form and determined that it had never been submitted to the EJSP Office of the Executive Assistant in Charge of Remedy Forms, as required by the EJSP Inmate Handbook.  (Johnson Dec. ¶ 13).  Plaintiff has not refuted this finding.

Because this is a motion for summary judgment, which "is designed to go beyond mere allegations, a certain degree of 'factual specificity is required of a party opposing such a motion.'" *Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 574 (D.N.J. 2003) (quoting *Herbert v. Newton Memorial Hospital*, 933 F. Supp. 1222, 1229 (D.N.J. 1996)). Therefore, a plaintiff opposing summary judgment "cannot simply rely on 'vague', 'self-serving' statements which are 'unsupported by specific facts in the record.'" *Heffron*, 270 F. Supp. 2d at 574-75 (quoting *Herbert*, 933 F. Supp. at 1229). In order to survive summary judgment, a plaintiff must point to "'concrete evidence in the record'" in support of his position.. *See id.* (quoting *Herbert*, 933 F. Supp. at 1229); Fed. R. Civ. P. 56(e). Here, Plaintiff has failed to meet this burden with respect to Count One of his Complaint. The form he submitted in support of his claim is incomplete. Moreover, Plaintiff has failed to oppose Defendants' allegation that the form was not ever submitted, and the evidence in the record supports Defendants' position.

Accordingly, as Plaintiff has failed to exhaust his administrative remedies with respect to his claim that Defendants conspired to and denied Plaintiff his right to due process of law when they confined Plaintiff in disciplinary detention for nine days, Count One of his Complaint must be dismissed.

Additionally, Plaintiff conceded in deposition that he did not seek administrative remedies concerning his claims of equal protection and retaliation raised in his Complaint. (Scott Dec., Ex. A at 39:11-40:24). Count Two asserts an equal protection claim, Counts Three and Four assert claims of retaliation, and Count Four also raises an equal protection claim. Furthermore, there is no evidence in the record that Plaintiff submitted any administrative remedy form that relates to the claims set forth in Counts Two or Three in his Complaint.

-13-

Because Plaintiff has failed to exhaust his administrative remedies for the equal protection and retaliation claims raised in those counts, they must also be dismissed.

With respect to Count Four of Plaintiff's Complaint, Defendants also argue Plaintiff failed to seek any administrative remedies regarding his allegation that his transfer from EJSP to SWSP was arbitrary and in violation of his constitutional rights. (Df. Br. at 15). The record indicates Plaintiff submitted a form dated March 13, 2005, seeking information regarding his transfer and asking that SID conduct an investigation to determine "how or why" Plaintiff was "arbitrarily . . . transferred" from EJSP to SWSP. (*Id.*; Villar Dec., Ex. B at 1, Ex. C at 5). In response, Plaintiff was advised that he must seek that information from the Special Investigations Division ("SID"). (Villar Dec., Ex. C at 5). On March 24, 2005, Plaintiff submitted a second administrative remedy form "requesting that SID advise [him] as to why [he] was transferred out of EJSP to SWSP[.]" (*Id.* at 6). The response indicates that "per Classification Dep[artment the inmate was] transferred administratively per admin[istration at] EJSP." (*Id.*) Although this may be construed as a effort by Plaintiff to seek an administrative remedy for a violation of due process, Plaintiff did not appeal either decision, as required by the SWSP inmate Handbook. (*Id.*) Accordingly, because Plaintiff failed to make use of the administrative appellate process, Plaintiff has not exhausted his administrative remedies with respect to this matter, and therefore Count Four must be dismissed in its entirety.

Finally, Plaintiff also failed to exhaust his administrative remedies with respect to his claim that Defendants knowingly and willfully neglected or refused to exercise reasonable diligence to prevent these acts to provide Plaintiff with a fair and impartial hearing and investigations in accordance with Title 10A of the New Jersey Administrative Code, identified as

count five of Plaintiff's Complaint.  Plaintiff has not asserted, nor has he provided any evidence that he sought any administrative remedy related to the allegations set forth in Count Five of his Complaint.  Accordingly, Count Five of the Complaint must be dismissed.

Because Plaintiff has failed to exhaust his administrative remedies with respect to any of the Counts raised in his Complaint, the Court need not address the additional points argued in Defendants' motion for summary judgment.  However the Court notes that Defendants are correct that the Eleventh Amendment bars Plaintiff's Complaint to the extent that he sought monetary damages for the actions of Defendants acting in their official capacities.  *See e.g.*, *A.W. v. Jersey City Public Schools*, 341 F. 3d 234, 238 (3d Cir. 2003);  *Broselow v. Fisher*, 319 F. 3d 605, 607 (3d Cir.2003).

### III. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted, and Plaintiff's Complaint shall be dismissed.  An appropriate form of order will be filed with this Opinion.

  s/ Stanley R. Chesler  
Stanley R. Chesler  
United States District Judge

Dated:   January 29, 2008